IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHRISTOPER M. DILLAHA<br><br>*Plaintiff*,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, AMAZON LOGISTICS, INC., DOVZA CORPORATION, and HABIMANA BOSCO<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. ________________<br><br>Judge __________________<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Christopher M. Dillaha ("Plaintiff"), by and through his undersigned counsel and complaining of the Defendants above-named, jointly and severally, would allege and show unto this Honorable Court the following, upon information and belief:

**<u>PARTIES, JURISDICTION AND VENUE</u>**

1. This case arises out of a tractor-trailer collision that caused serious injury and significant damages to Plaintiff on November 17, 2022 in Moore County, Texas (hereinafter, "the subject collision").

2. At the time of the subject collision, Plaintiff was a citizen and resident of Smith County, Tennessee.

3. At the time of the subject collision, Defendant **AMAZON.COM, INC.** ("Amazon.com") was, upon information and belief, and remains a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business in King County, Washington. Amazon.com does not maintain a registered agent for service of process in the State of Texas and may be served with process through its registered agent for service of process in the State

of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste 208 MC-CSC1, Tumwater, Washington 98501.

4. At the time of the subject collision, Defendant **AMAZON.COM SERVICES, LLC** ("Amazon Services") was, upon information and belief, and remains a foreign limited liability company formed under the laws of the State of Delaware with its principal place of business in King County, Washington. Amazon Services is registered to do business in the State of Texas and may be served with process via its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5. Upon information and belief, Amazon Services is a wholly owned subsidiary of Amazon.com and a subsidiary, sister entity, or affiliate of Defendant Amazon Logistics, Inc.

6. Amazon Services operates the Amazon.com marketplace and relies on and advertises immediate delivery of products ordered by customers. To meet their customer service promises and delivery deadlines, Amazon Services has distribution, warehouse, and storage facilities throughout Texas and contracts with thousands of interstate and intrastate motor carrier trucking companies to position those goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers. Amazon Services was transacting substantial business in Texas on the date of the subject collision and is subject to the jurisdiction and venue of this Court.

7. At the time of the subject collision, Defendant **AMAZON LOGISTICS, INC.** ("Amazon Logistics") was, upon information and belief, and remains a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business in King County, Washington. Amazon Logistics is registered to do business in the State of Texas and may be served with process via its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

8. Upon information and belief, Amazon Logistics is a wholly owned subsidiary of Amazon.com and a subsidiary, sister entity, or affiliate of Amazon Services.

9. Amazon Logistics is the transportation and logistics subsidiary of Amazon.com and is part of the world's largest online retailer that relies on and advertises immediate delivery of products ordered by customers. To meet their customer service promises and delivery deadlines, Amazon Logistics has or regularly arranges deliveries to distribution, warehouse, and storage facilities throughout Texas and contracts with thousands of interstate and intrastate motor carrier trucking companies to position Amazon goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers. Amazon Logistics was transacting substantial business in Texas on the date of the subject collision and is subject to the jurisdiction and venue of this Court.

10. Defendants Amazon.com, Amazon Services, and Amazon Logistics and their agents, representatives, contractors, subsidiaries, affiliates, and employees (hereinafter, collectively referred to as "the Amazon Defendants") were engaged in a joint venture for the promotion, sale, and delivery of products sold on Amazon.com, including sales and deliveries to Texas residents, and that involved the subject load being transported on the date of the subject collision.

11. General personal jurisdiction over the Amazon Defendants is proper since the Amazon Defendants engaged in substantial business activity in Texas, directed activities in Texas, and maintain an enduring relationship with Texas, including without limitation: being registered to do business in Texas; owning and/or leasing property in Texas; operating warehouses, fulfillment centers, and distribution centers in Texas, including seventeen (17) fulfillment and sortation centers, ten (10) delivery stations, five (5) Prime Now hubs, three (3) tech hubs, and four (4) Amazon Air hubs; engaging in millions of sales and deliveries to Texas consumers; contracting with Texas-based motor carriers and truck drivers to deliver goods in other states; contracting for the transport and delivery of products it sells in Texas; utilizing tractor-trailers to deliver products it sells on the interstates, highways, and roadways in Texas; regularly engaging in the ultra-hazardous activity of arranging for the transportation of goods and packages in interstate and intrastate commerce over Texas roads to and for Texas residents and businesses; providing services to its customers using commercial transportation

services in Texas that include transporting goods in interstate and intrastate commerce; and by otherwise conducting substantial, continuous and systematic business in the State of Texas on a daily basis. *See* Tex. Civ. Prac. & Rem Code § 17.042(1).

12. Specific personal jurisdiction over the Amazon Defendants is proper under the Texas Long Arm Statute and satisfies constitutional requirements as the Amazon Defendants, both directly and through their agents, committed tortious acts in Texas, including: contributing to the subject collision; causing injury to persons and property within Texas arising out of acts or omissions outside this state, including the hiring and/or retention of unfit, unqualified, unvetted, untrained, and/or dangerous drivers and trucking companies involved in commercial transportation on Texas roadways; breaches of duties owed for proper inspection, maintenance, and/or repair of transportation equipment and proper training and/or supervision of the same, as well as in the use, provision, and/or failure to maintain equipment involved in commercial transportation on Texas roadways; by improperly qualifying and investigating Defendants Dovza Corporation and Habimana Bosco, which allowed Defendants Dovza Corporation and Habimana Bosco to drive for the Amazon Defendants despite a poor safety record; by failing to monitor the safety record and performance of Defendants Dovza Corporation and Habimana Bosco after they were initially approved to transport goods for the Amazon Defendants; and by continuing to use Defendants Dovza Corporation and Habimana Bosco despite their poor safety record, all of which causally contributed to the subject collision. *See* Tex. Civ. Prac. & Rem Code § 17.042(2).

13. At the time of the subject collision, Defendant **DOVZA CORPORATION** ("Dovza") was, upon information and belief, and remains a foreign limited liability company formed under the laws of the State of Illinois with its principal place of business in Will County, Illinois. Dovza does not maintain a registered agent for service of process in the State of Texas and may be served with process through its registered agent for service of process in the State of Illinois, Askar Egamberdiev, 12207 Rhea Dr., Suite C, Plainfield, Illinois 60585-9713.

14. At the time of the subject collision, Dovza was an active interstate Motor Carrier (USDOT# 3412144) registered with the Federal Motor Carrier Safety Administration.

15. At all relevant times hereto, Dovza operated a trucking company engaged in interstate commerce, and regularly and systematically transacted, solicited, and conducted business in the State of Texas.

16. At all relevant times hereto, Dovza was a motor carrier pursuant to 49 C.F.R. Part 392.3 and 49 C.F.R. Part 395.1 and 49 C.F.R. Part 395.8

17. At the time of the subject collision, Defendant **HABIMANA BOSCO** ("Bosco") was, upon information and belief, an individual citizen and resident of Maricopa County, Arizona. This defendant may be served with process at 8245 N 27th Ave, Apt. 2017, Phoenix, Arizona 85051-6365.

18. At all relevant times hereto, Bosco was a motor carrier driver pursuant to 49 C.F.R. Part 392.3 and 49 C.F.R. Part 395.1 and 49 C.F.R. Part 395.8.

19. This Court has jurisdiction over the Parties pursuant to 28 USC § 1332(a)(1) because the matter in controversy exceeds the value of $75,000, and there is complete diversity of citizenship. Venue in this Court is proper pursuant to 28 USC § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

20. The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly, and with due caution. Accordingly, there are a number of federal regulations, state statutes, industry standards, and local ordinances that govern the qualification, training, supervision, and retention of professional tractor-trailer drivers; the proper maintenance and equipment for commercial motor

vehicles; and the safe operation of brokers, motor carriers, commercial motor vehicles and professional truck drivers.

21. As part of a strategy to vertically integrate and take control of shipping and logistics away from third parties, such as FedEx and UPS, the Amazon Defendants have been building, refining, expanding, and using a logistics and transportation network of their own to transport goods from manufacturers and retailers to its warehouses, distribution centers, and ultimately to customers throughout the country, including Texas.

22. The Amazon Defendants' vast logistics and transportation network is managed by Defendant Amazon Logistics.

23. As part of this strategy, the Amazon Defendants routinely enter into contracts with shippers, transportation companies, interstate motor carriers, intrastate motor carriers, and local delivery partners to ensure that items purchased by the customers are picked up from the shippers and timely delivered to the customers.

24. At all times pertinent hereto, the Amazon Defendants used various programs to ensure packages were delivered rapidly, with an emphasis that packages must be delivered precisely at the time the Amazon Defendants have scheduled in order to meet Amazon.com's promises to their end customers as to when the product would be delivered.

25. Upon information and belief, the Amazon Defendants, to save money on product deliveries, have engaged in a "race to the bottom" of the trucking industry as its rates of compensation for truck drivers and motor carriers have decreased in recent years to less than market rates—a disincentive for competent and safe professional truck drivers and motor carriers, who can find work elsewhere.

26. In addition, again upon information and belief, to combat the nationwide shortage of professional truck drivers, the Amazon Defendants have begun encouraging people with no experience driving commercial motor vehicles, and businesses with no experience operating interstate motor carriers or trucking companies, to start their own trucking companies to transport goods for the Amazon Defendants.

27. To obtain interstate motor carrier operating authority from the United States Department of Transportation ("USDOT") through its Federal Motor Carrier Safety Administration ("FMCSA"), a person or business is only required to complete an online application, pay $300.00, and show proof of the minimum insurance limits.

28. Upon information and belief, the Amazon Defendants knew that to obtain interstate motor carrier operating authority from the FMCSA, a person or business is only required to complete an online application, pay $300.00, and show proof of the minimum insurance limits.

29. Once the application process is complete, a new entrant is typically granted interstate motor carrier operating authority within 30-60 days.

30. While the new applicant must agree to abide by the applicable Federal Motor Carrier Safety Regulations ("FMCSRs"), the FMCSA does not conduct any safety audit or investigation on whether the motor carrier applicant has appropriate safety management controls in place to comply with the FMCSRs before granting new entrants interstate motor carrier operating authority.

31. Upon information and belief, the Amazon Defendants knew that while the new applicant must agree to abide by the applicable FMCSRs, the FMCSA does not conduct any safety audit or investigation on whether the motor carrier applicant has appropriate safety management

controls in place to comply with the FMCSRs before granting new entrants interstate motor carrier operating authority.

32. These newly authorized motor carriers are designated "New Entrant" motor carriers and have no safety rating from the FMCSA, with a safety designation of "Unrated."

33. Upon information and belief, the Amazon Defendants also use other motor carriers that are not New Entrants but that are also designated as "Unrated," meaning they have not passed a safety audit by the FMCSA verifying that the motor carrier has appropriate safety management controls in place to comply with the FMCSR, to transport freight safely across the roadways of the United States.

34. Upon information and belief, the Amazon Defendants utilize these "Unrated" motor carriers without any further investigation or inquiry into their safety management controls and/or safety history.

35. Upon information and belief, at all times pertinent hereto, specifically to include the time of the subject collision, Dovza was an "Unrated" motor carrier.

36. Upon information and belief, once a company has obtained interstate operating authority, it can become part of the Amazon Defendant's network by simply applying to "partner with Amazon" to haul loads of freight under their Amazon Relay Program despite having no safety rating and without any confirmation that the motor carrier has the required safety management controls in place to ensure compliance with the appliable FMCSRs, which are in place to ensure the safe movement of products through the transportation system and to reduce the risk of highway incidents resulting in fatalities, injuries, and property damage.

37. Upon information and belief, the Amazon Defendants do not conduct any safety investigation into motor carriers or truck drivers beyond verifying current operating authority, proof of insurance, and that the motor carrier does not have a safety rating of "Unsatisfactory."

38. Upon information and belief, the Amazon Defendants exert control over the details of the work done by motor carriers and drivers using a variety of tools, including internal compliance teams and a third-party compliance monitoring service, to continually monitor motor carrier compliance with their policies and to make sure the companies deliver Amazon goods on time.

39. Upon information and belief, a motor carrier that partners with Amazon is required to use the Amazon Relay Program, which is a suite of technology products that enable carriers to self-register with Amazon and find, book, and execute Amazon loads.

40. Upon information and belief, Amazon requires all motor carriers and their drivers to use the Amazon Relay Program technology products in order to deliver Amazon loads.

41. Upon information and belief, motor carriers use the Amazon Relay Program to accept loads, assign drivers, access Amazon's Relay Load Board, track performance, view and download payment details, and report concerns, among others.

42. Upon information and belief, through the Load Board in the Amazon Relay Program, drivers and carriers can search for assignments in their area and book them.

43. Upon information and belief, motor carriers access the Amazon Relay Program through a web browser that enables them to access a Driver Roster and to view Amazon's grading of each driver's performance, in addition to the carrier's performance overall.

44. Upon information and belief, the assignments on the Load Board are preset by Amazon to include details such as the departure time and location for the trip; arrival and departure time for each stop along the way; and the required arrival time at the final destination.

45. Upon information and belief, some loads involve connecting the motor carrier's tractor to a preloaded trailer and hauling the trailer to its destination in what is known as a "drop-and-hook" operation; others require the motor carrier or driver to supply the trailer.

46. Upon information and belief, motor carriers working for Amazon do not negotiate payment; the payment amount is preset by Amazon into the Load Board for each assignment.

47. Upon information and belief, once a motor carrier books an assignment, the carrier must then assign a driver through the Amazon Relay Program, and the assignment appears on the driver's Amazon Relay phone app.

48. Upon information and belief, once the truck driver is assigned to a load in the Amazon Relay Program phone app, Amazon no longer communicates with the motor carrier, and all communications are directly with the truck driver.

49. Upon information and belief, drivers can view and manage load status, report delays, and use commercial navigation through Amazon's mobile-based Relay Program app for iOS and Android devices.

50. Upon information and belief, when a motor carrier or driver books a shipment through the Amazon Relay Program, the Load Board generates a map for navigation by the driver, dictating the exact route the driver is to follow and identifying each stop with numbers on the map and delivery times.

51. Upon information and belief, drivers use the Amazon Relay Program app to report delays and to update their estimated time of arrival.

52. Upon information and belief, the Amazon Defendants therefore know the identity of the actual drivers transporting their freight and can and do control and monitor those drivers and the location of their loads through the Amazon Relay Program app.

53. Upon information and belief, although drivers are permitted to arrive early at their destinations, the driver or the motor carrier is punished by the Amazon Defendants for arriving late.

54. Upon information and belief, at all times pertinent hereto, specifically to include the date and time of the subject collision, the Amazon Defendants monitored the performance of motor carriers and drivers using three metrics:

a. the rate of on-time deliveries;

b. tender acceptance (not canceling after booking a load); and

c. usage of the Amazon Relay Program app.

55. Upon information and belief, carriers who meet Amazon's performance goals are rewarded with early access to certain assignments posted on the Load Board before the assignments become available to other Amazon partner motor carriers.

56. Upon information and belief, driver and motor carrier safety are not considered in Amazon's performance metrics.

57. Upon information and belief, "invoices" are automatically generated by the Amazon Relay Program app, with the pay week running from Sunday to Saturday and drivers/carriers typically getting money deposited in their bank accounts the following Friday.

58. Upon information and belief, while drivers and carriers are penalized for canceling a trip, Amazon may cancel or reschedule a load without notice at any time before the trip begins.

59. At the time of the subject collision, Dovza was an interstate motor carrier authorized to transport goods in interstate commerce and in the State of Texas pursuant to one or more permits issued by the Interstate Commerce Commission ("ICC") and/or by the USDOT. Accordingly, Dovza was subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring, training, and supervision of safe and qualified commercial truck drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including, without limitation, Texas Transportation Code, Title 7, Subtitle C, Chapters 541-545, and the applicable FMCSR set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

60. Upon information and belief, the Amazon Relay program required Dovza to enter into an agreement simply by downloading and using their website or the Amazon Relay Program mobile application, which is subject to the Amazon Relay Carrier Terms of Service (the "Amazon Relay Program Agreement").

61. Upon information and belief, the Amazon Relay Program Agreement included and required Dovza and its employees and drivers, specifically to include Bosco, to comply with the Amazon Relay Program Agreement.

62. Upon information and belief, the Amazon Relay Program Agreement included, among other things, Amazon's Code of Business Conduct and Ethics and Amazon's Supplier Code of Conduct. The Amazon Relay Program Agreement retained control of many aspects of the transportation related services Dovza and Bosco provided the Amazon Defendants, including receiving, loading, storing, transporting, delivering, and unloading Amazon products; complying with Amazon's and any third party's safety and security policies related to Amazon's or such third party's premises and cargo; waiver of lien and salvage rights; notification and reporting

requirements; limitations on times of the year the Amazon Relay Program Agreement can be terminated; defense of claims; choice of counsel; agreement to the interchange use of all trailers; inspections and reporting for trailers; limitations on repairs to trailers without Amazon's consent; requiring compliance with Amazon's multi-stop, one way, or spot work given on an ad hoc basis; dedicated box trucks; delivery times and routes; full compliance with all Amazon policies, procedures and instructions provided by Amazon for any third-party shipper or trip; preventing any subcontracting of the loads assigned by Amazon; exclusive use while transporting for Amazon; requiring separate accounts for each Amazon affiliate; compliance with Amazon's required technology; limitations on how motor carriers hire and classify their truck drivers; requiring the design and implementation of specific programs for measuring service levels for Amazon; requiring Amazon specific business activity reports to be kept; requirements for loads, routes, and equipment; and the training and monitoring of truck drivers and employees of the trucking company.

63. At all times material hereto, Bosco was a Class A licensed commercial motor vehicle operator driving a 2022 Freightliner tractor bearing VIN 3AKJHHDR8NSMZ0422 ("Tractor") and towing a trailer ("Trailer") under the motor carrier operating authority of Dovza (hereinafter, collectively referred to as the "Tractor-Trailer").

64. Accordingly, Bosco was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers.

65. Upon information and belief, the Tractor was owned by Dovza and was being driven by Bosco under the motor carrier operating authority of Dovza at all times material hereto.

66. Upon information and belief, the Trailer, which is subject to the FMCSR, was owned or leased by the Amazon Defendants at all times material hereto.

67. Upon information and belief, Dovza owned the Tractor at all times material hereto.

68. Upon information and belief, Dovza had permission to use the Trailer at all times material hereto.

69. Upon information and belief, Bosco was using the Tractor-Trailer under the operating authority of Dovza at all times material hereto.

70. Upon information and belief, one or more of the Amazon Defendants owned, loaded, leased, controlled, used, and/or had permission to use the Trailer at all times material hereto.

71. Upon information and belief, Bosco had permission to use the Tractor at all times material hereto.

72. Upon information and belief, Bosco had permission to use the Trailer at all times material hereto.

73. Upon information and belief, Bosco and Dovza were using the Trailer with the permission of and for the benefit of, and at the exact direction and control of, one or more of the Amazon Defendants at all times material hereto.

74. At all times material hereto, Bosco was an employee, agent, apparent agent and/or servant driving and performing services for Dovza.

75. At the time of the subject collision, Bosco was acting in the ordinary course and scope of said employment, agency, apparent agency, and/or service and subject to Dovza's control or right to control, such that Dovza should be considered his actual and statutory employer, agent, apparent agent and/or servant.

76. At the time of the subject collision, Bosco and Dovza were acting within the ordinary course and scope of their employment, agency, apparent agency, and/or service of the Amazon Defendants control or right to control, such that Bosco and Dovza should be considered the actual and statutory employees, agents, apparent agents, and/or servants of one or more of the Amazon Defendants.

77. At all times material hereto, Bosco and Dovza had non-delegable duties to ensure that their drivers and commercial motor vehicles were reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on Texas roadways.

78. At all times material hereto, the Amazon Defendants had non-delegable duties to ensure that the trucking companies they hired to deliver its goods throughout the United States in tractor-trailers and other commercial motor vehicles, and the truck drivers the Amazon Defendants monitored and controlled, were reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on Texas roadways.

79. Each of the Defendants acted in a manner that either alone or combined and occurring with the actions of the other Defendants' acts of negligence, directly and proximately caused the subject collision described hereinafter and the resulting damages sustained by Plaintiff.

## FACTUAL ALLEGATIONS REGARDING THE SUBJECT COLLISION

80. On November 17, 2022 at approximately 11:00 a.m., Plaintiff was a restrained driver traveling east on U.S. 354 near the intersection of FM 2202 in Moore County, Texas.

81. At or about the same time, Bosco, while operating a commercial motor vehicle in the ordinary course and scope of his employment with Dovza and in his capacity as agent, servant, workman, and/or employee of the Amazon Defendants, was traveling south on FM 2202.

82. The intersection of U.S. 354 and FM 2022 is controlled by a stop sign for southbound traffic on FM 2202. Vehicles traveling on U.S. 354 are not required to stop at the intersection of U.S. 354 and FM 2022. Consequently, at all times relevant, Plaintiff possessed the right-of-way as he approached the intersection of U.S. 354 and FM 2022.

83. Suddenly and without warning, Bosco recklessly disregarded the stop sign at the intersection of U.S. 354 and FM 2022 and executed an unsafe left turn onto U.S. 354 in front of the tractor-trailer that Plaintiff was operating.

84. Plaintiff attempted to evade colliding with Bosco by attempting a rapid stop and swerving the tractor-trailer that Plaintiff was operating, but Plaintiff was unable to avoid the subject collision, and the driver's side front of his tractor crashed into the rear of the trailer that Bosco was pulling.

85. Bosco fled the scene of the crash.

86. Bosco, Dovza and the Amazon Defendants knew or should have known that Bosco was disregarding official traffic control devices prior to and at the time of the subject collision.

87. Despite knowing Bosco was disregarding official traffic control devices prior to and at the time of the subject collision, Dovza and the Amazon Defendants continued to let Bosco operate a commercial motor vehicle without any additional training.

88. As a result of the impact, Plaintiff suffered significant and permanent injuries.

89. Plaintiff did not cause or contribute to the subject collision in any way.

90. The subject collision occurred through no fault of Plaintiff.

91. Plaintiff was acting in a reasonably prudent and careful manner at all times relevant hereto.

**FACTUAL ALLEGATIONS REGARDING DEFENDANTS**

92. On the aforementioned date, place, and time, Bosco operated the aforesaid Tractor-Trailer in such a reckless, careless, and negligent manner so as to disregard an official traffic control device and pull out into the path of the tractor-trailer that Plaintiff was operating, causing the subject collision.

93. Upon information and belief, Bosco had an unsafe history of operating commercial motor vehicles at all times material hereto.

94. Upon information and belief, Dovza and the Amazon Defendants knew or should have known of Bosco's unsafe history of operating commercial motor vehicles, either through a simple and inexpensive search, due diligence, or by requiring Bosco to disclose the same on his employment application.

95. At all times material hereto, Bosco was a dangerous and incompetent commercial motor vehicle operator with a history of safety issues, violations of state and federal laws and regulations and industry safety standards, and a poor record for safety. Upon information and belief, that information was readily available to all Defendants, including on the in-truck camera system, which provided real-time and historical access to violations of speed limits, taking unsafe detours or shortcuts and disregarding official traffic control devices.

96. At all times material hereto, Dovza and the Amazon Defendants were aware or, with minimal effort, should have been aware of the above-described safety violations.

**DAMAGES TO PLAINTIFF**

97. Plaintiff was injured in and about the body and suffered, inter alia: permanent injuries, disability, disfigurement, scarring, pain and suffering, aggravation of preexisting conditions, loss of past wages, loss of future earning capacity, mental anguish, loss of enjoyment

of life, medical expenses in the care and treatment of said injuries, inconvenience, as well as noneconomic damages associated therewith. All injuries are permanent within a reasonable degree of medical probability, and all injuries will require future medical treatment. Plaintiff will continue to suffer these damages in the future.

**COUNT ONE – NEGLIGENCE/GROSS NEGLIGENCE (ALL DEFENDANTS)**

98. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

99. At all times relevant hereto, Bosco was an employee, agent, and legal representative of Dovza and the Amazon Defendants acting in the ordinary course and scope of his employment.

100. Dovza and the Amazon Defendants controlled the actions of Bosco on November 17, 2022, and therefore are responsible for his actions and inactions on November 17, 2022.

101. The subject collision, injuries, and damages described in this Complaint were the direct, foreseeable, and proximate result of the negligent and careless, and willful, wanton, reckless, and grossly negligent acts or omissions of Bosco, who was acting in the ordinary course and scope of his employment, agency, and representation of Dovza and the Amazon Defendants, in the following particulars to wit:

a. Failing to keep a proper lookout;
b. Failing to maintain his commercial motor vehicle under proper control;
c. Failing to yield the right of way to Plaintiff's vehicle in accordance with Tex. Transp. Code § 545.153, when the vehicle occupied by Plaintiff possessed the right of way at all times pertinent hereto;

d. Driving a commercial motor vehicle in such a manner to indicate willful, wanton, reckless, grossly negligent, and negligent disregard for the safety of others, in violation of Tex. Transp. Code § 545.401;

e. Failing to obey official traffic-control devices, in violation of Tex. Transp. Code § 544.004;

f. Failing to operate a commercial motor vehicle with a valid medical certificate, as required by the FMCSR;

g. Failing to operate a commercial motor vehicle in the manner required by the FMCSR, including in violation of Hours of Service rules;

h. Failing to operate a commercial motor vehicle in the manner required by the professional standards established by Texas, including in violation of Hours of Service rules;

i. Failing to properly maintain, inspect, service and repair the commercial motor vehicle in violation of the FMCSR and state laws;

j. Permitting use of and operating a trailer with an overlength kingpin in violation of FMCSR 392.2;

k. Failing to properly perform and document the pre- and post-trip inspections in violation of the FMCSR and state laws;

l. Failing to use the degree of care and caution that a reasonable person would have used under the circumstances then and there prevailing; and

m. In such other and further particulars as the evidence at trial may show.

All of which acts and omissions, or both, were the actual, direct, and proximate result of the damages and injuries claimed herein.

102. As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Bosco, Dovza, and the Amazon Defendants as set out above, Plaintiff has suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages.

103. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Bosco, Dovza, and the Amazon Defendants as set out above, as well as their violations of federal and state law, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT TWO – NEGLIGENCE PER SE**
**(ALL DEFENDANTS)**

104. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

105. Bosco's negligence as described in Count Two violated the following sections of the Texas Transportation Code:

a. Tex. Transp. Code § 545.153;

b. Tex. Transp. Code § 545.401; and

c. Tex. Transp. Code § 544.004.

106. Each of the aforementioned statutes is designed to protect a class of persons to which Plaintiff belongs against the type of injuries suffered by Plaintiff in the subject collision.

107. Each of the aforementioned statutes is of the type that impose tort liability.

108. Bosco's violation of each of the aforementioned statutes was without legal excuse.

109. Bosco's violation of each of the aforementioned statutes was the direct and proximate cause of Plaintiff's injuries and damages complained of herein.

**COUNT THREE – NEGLIGENT ENTRUSTMENT**
**(DOVZA and AMAZON DEFENDANTS)**

110. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

111. Dovza and the Amazon Defendants knew or should have known that Bosco was untrained and incapable of operating his commercial motor vehicle in the manner as required by the FMCSR and state law.

112. Dovza and the Amazon Defendants knew or should have known that Bosco's inexperience and lack of training were evidence that he was incapable of complying with the FMCSR and state law, and he was therefore a reckless driver.

113. Dovza and the Amazon Defendants entrusted a commercial motor vehicle to Bosco despite knowing that he lacked proper training and experience.

114. Dovza and the Amazon Defendants are therefore vicariously liable under the doctrine of negligent entrustment for the negligence of Bosco, which directly and proximately contributed to cause the subject collision and the injuries to Plaintiff as described above.

115. As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Bosco, Dovza, and the Amazon Defendants as set out above, Plaintiff has suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages.

116. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Bosco, Dovza, and the Amazon Defendants as set out above, as well as their violations of federal and state law, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT FOUR – NEGLIGENT HIRING, TRAINING, RETENTION and SUPERVISION**
**(DOVZA and AMAZON DEFENDANTS)**

117. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

118. Dovza and the Amazon Defendants owed statutory and common law duties to Plaintiff not to negligently hire, supervise, or retain commercial truck drivers incapable of complying with all provisions of the FMCSR and state law.

119. Dovza and the Amazon Defendants failed to properly review, interview, or interact with Bosco prior to hiring Bosco as a commercial truck driver.

120. Dovza and the Amazon Defendants knew or should have known that Bosco lacked the proper training, experience, and ability to comply with all provisions of the FMCSR and state law.

121. Dovza and the Amazon Defendants knew or should have known that Bosco's inexperience, lack of training, and inability to comply with the FMCSR were evidence that he was unable to comply with federal law and state law and was therefore a reckless driver.

122. Dovza and the Amazon Defendants failed to adequately interact with Bosco prior to utilizing Bosco as a commercial truck driver.

123. Dovza and the Amazon Defendants failed to properly supervise and train Bosco, in violation of the FMCSR and state law.

124. Dovza and the Amazon Defendants allowed Bosco to continue to operate a commercial motor vehicle without the most basic training, in violation of the FMCSR and state law.

125. As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Dovza, the Amazon Defendants and Bosco as

set out above, Plaintiff has suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages.

126. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Dovza, the Amazon Defendants and Bosco as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT FIVE – NEGLIGENT MAINTENANCE**
**(ALL DEFENDANTS)**

127. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

128. Dovza and the Amazon Defendants owed statutory and common law duties to Plaintiff to properly maintain, inspect, service, and repair all equipment on the Tractor-Trailer driven by Bosco on the date of the subject collision.

129. Dovza, the Amazon Defendants, and Bosco failed to properly maintain, inspect, service, and repair the Tractor-Trailer in accordance with the most basic laws mandated by the FMCSR and state laws.

130. Dovza, the Amazon Defendants, and Bosco knew or should have known that the Tractor-Trailer and all other equipment utilized on the date of the subject collision were not properly maintained, inspected, serviced, and repaired in accordance with the FMCSR and state laws.

131. Dovza and the Amazon Defendants entrusted a commercial tractor and trailer to Bosco despite knowing the Tractor-Trailer was not properly maintained, inspected, serviced, and repaired in accordance with the most basic laws mandated by the FMCSR and state laws.

132. As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Dovza, the Amazon Defendants and Bosco as set out above, Plaintiff has suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages.

133. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Dovza, the Amazon Defendants and Bosco as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT SIX – NEGLIGENCE/GROSS NEGLIGENCE**
**(AMAZON.COM)**

134. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

135. Amazon.com, by and through its employees, agents, subsidiaries, and contractors, as an integral part of its business and promises to customers for prompt delivery of goods, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States of America.

136. Amazon.com was the parent entity and mastermind of the Amazon Defendants' scheme to put profits over safety by delivering its goods to customers utilizing unsafe and unrated motor carriers without any regard for the safety of the motoring public.

137. Amazon.com created a foreseeable zone of danger to the public, specifically to include Plaintiff, including the foreseeable danger and expected consequence that people would be injured and/or killed by the unsafe and inexperienced motor carriers and their dangerous drivers that the Amazon Defendants' employees, agents, related entities, and contractors utilized to move

their goods in interstate commerce, including Dovza and Bosco, as evidenced by, *inter alia*, the Amazon Defendants' decision to utilize the services of unfit, unqualified, unvetted, untrained, and/or dangerous motor carriers using the roads and highways of Texas.

138. Accordingly, Amazon.com had nondelegable duties to act as a reasonable transportation shipper in the qualifying, monitoring, and selecting of reasonably safe interstate motor carriers to transport its freight.

139. Upon information and belief, Amazon.com also had contractual duties with its product suppliers to only select satisfactory motor carriers that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

140. Amazon.com, by and through its employees, agents, subsidiaries, and contractors, undertook the duty to investigate, qualify, monitor, and select Dovza as a qualified motor carrier to move freight in interstate commerce for its customers.

141. Amazon.com, through its unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the motor carriers and actual drivers delivering its freight.

142. Amazon.com breached those duties by and through its employees, agents, subsidiaries, and contractors, selected Dovza, a dangerous motor carrier with a history of serious safety violations that showed it was likely to cause a collision.

143. Amazon.com breached those duties by not recognizing the dangerous and risky propensities of Dovza, by not utilizing or ignoring the information available regarding Dovza, and continuing to retain Dovza to move its freight.

144. Amazon.com was or should have been aware that Dovza used Bosco to move its freight.

145. Driving and operating the Tractor-Trailer involved in the subject collision constituted work that involved the risk of physical harm unless it was skillfully and carefully done. Amazon.com knew or should have known of this but failed to take the necessary precautions with respect to this risk.

146. Amazon.com further failed to enact and enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating state traffic laws and the FMCSR while delivering goods for Amazon.com.

147. Amazon.com failed to exercise reasonable control over the motor carriers and drivers it uses, including Dovza and Bosco, thereby exposing other motorists to unsafe acts and omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

148. Amazon.com, by and through its employees, agents, subsidiaries, and contractors, breached its duties and was therefore negligent in one or more of the following ways:

a. Failing to perform or improperly performing background, driving record, physical fitness and/or character investigations that would have revealed Dovza and Bosco were unsafe and/or incompetent to perform the task as assigned;

b. Hiring and retaining Dovza and Bosco, despite the existence and ready availability of subpar safety ratings and driving records, which were or should have been known to Amazon.com;

c. Failing to verify and ensure that Dovza hired drivers what would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

d. Failing to perform or improperly performing review, audit and selection actions verifying Dovza and Bosco were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles;

e. Failing to perform or improperly performing performance reviews and records checks that would have revealed Dovza and Bosco were unfit to safely operate a commercial motor vehicle; and

f. Failing to review or utilize equipment in or on the Tractor-Trailer providing real-time and historical access to Bosco's continual violations of speed limits and disregard of official traffic control devices.

149. The negligence of Amazon.com, by and through its employees, agents, subsidiaries, and contractors, described above, directly and proximately contributed to cause the subject collision and Plaintiff's injuries.

150. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Amazon.com as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT SEVEN – VICARIOUS LIABILITY**
**(AMAZON.COM)**

151. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

152. Prior to the subject collision, Amazon.com, by and through its employees, agents, subsidiaries, and contractors, had already hired, selected, employed, retained, and/or otherwise engaged the services of Dovza and Bosco to perform core tasks for and on behalf of the Amazon Defendants, including the delivery of goods in interstate commerce and on Texas roadways.

153. The subject collision occurred while Dovza and Bosco were actively performing core tasks for and on behalf of the Amazon Defendants.

154. On the date of the subject collision, Dovza and Bosco were acting as the agent of Amazon.com as:

a. Amazon.com, by and through its employees, agents, subsidiaries, and contractors, knew and acknowledged that Dovza and Bosco would act for and on behalf of the Amazon Defendants by delivering goods for the Amazon Defendants;

b. Dovza and Bosco accepted that undertaking and was delivering goods for the Amazon Defendants at the time of the subject collision; and

c. Amazon.com, by and through its employees, agents, subsidiaries, and contractors, exercised control and/or reserved the right to exercise control over Dovza and Bosco and the details of the services to be performed while acting within the scope of the agency delivering goods for the Amazon Defendants, including without limitation by: controlling the route and time of delivery; and providing tools necessary to complete the transportation such as the application software to arrange for, track, communicate with, and get paid for the subject load in question; and by loading and providing the Trailer in question.

155. Amazon.com is strictly liable for the acts and omissions constituting negligence and recklessness of Dovza and Bosco arising out of the work and services performed by Dovza and Bosco on behalf of the Amazon Defendants.

156. The negligence of Amazon.com's agents, Dovza and Bosco, did directly and proximately contribute to cause the subject collision and Plaintiff's injuries.

157. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Amazon.com as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT EIGHT – NEGLIGENCE/GROSS NEGLIGENCE**
**(AMAZON SERVICES)**

158. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

159. Amazon Services, by and through its employees, agents, related entities, affiliates, and contractors, as an integral part of its business and promises to customers for prompt delivery of goods, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States of America.

160. Amazon Services was a subsidiary of Amazon.com and a related entity to Amazon Logistics. Amazon Services, by and through its employees, agents, related entities, affiliates, and contractors, knew of, was an active participant in, and profited from the Amazon Defendants' scheme to put profits over safety by delivering its goods to customers utilizing unsafe and unrated motor carriers without any regard for the safety of the motoring public.

161. Amazon Services created a foreseeable zone of danger to the public, specifically to include Plaintiff, including the foreseeable danger and expected consequence that people would be injured and/or killed by the unsafe and inexperienced motor carriers and their dangerous drivers that the Amazon Defendants' employees, agents, related entities, and contractors, utilized to move their goods in interstate commerce, including Dovza and Bosco, as evidenced by, i*nter alia*, the Amazon Defendants' decision to utilize the services of unfit, unqualified, unvetted, untrained, and/or dangerous motor carriers using the roads and highways of Texas.

162. Accordingly, Amazon Services had nondelegable duties to act as a reasonable transportation shipper in the qualifying, monitoring, and selecting of reasonably safe interstate motor carriers to transport its freight.

163. Upon information and belief, Amazon Services also had contractual duties with its product suppliers to only select satisfactory motor carriers that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

164. Amazon Services, by and through its employees, agents, related entities, and contractors, undertook the duty to investigate, qualify, monitor, and select Dovza as a qualified motor carrier to move freight in interstate commerce for its customers.

165. Amazon Services, through its unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the motor carriers and actual drivers delivering its freight.

166. Amazon Services breached those duties, by and through its employees, agents, subsidiaries, and contractors, and selected Dovza, a dangerous motor carrier with a history of serious safety violations that showed it was likely to cause a collision.

167. Amazon Services breached those duties by not recognizing the dangerous and risky propensities of Dovza, by not utilizing or ignoring the information available regarding Dovza, and continuing to retain Dovza to move its freight.

168. Amazon Services was or should have been aware that Dovza used Bosco to move its freight.

169. Driving and operating the Tractor-Trailer involved in the subject collision constituted work that involved the risk of physical harm unless it was skillfully and carefully done.

Amazon Services knew or should have known of this but failed to take the necessary precautions with respect to this risk.

170. Amazon Services further failed to enact and enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating state traffic laws and the FMCSR while delivering goods for Amazon Services.

171. Amazon Services failed to exercise reasonable control over the motor carriers and drivers it uses, including Dovza used Bosco, thereby exposing other motorists to unsafe acts and omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

172. Amazon Services, by and through its employees, agents, related entities, and contractors, breached its duties and was therefore negligent in one or more of the following ways:

a. Failing to perform or improperly performing background, driving record, physical fitness and/or character investigations that would have revealed Dovza used Bosco were unsafe and/or incompetent to perform the task as assigned;

b. Hiring and retaining Dovza used Bosco, despite the existence and ready availability of subpar safety ratings and driving records, which were or should have been known to Amazon Services;

c. Failing to verify and ensure that Dovza hired drivers what would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

d. Failing to perform or improperly performing review, audit and selection actions verifying Dovza used Bosco were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles;

e. Failing to perform or improperly performing performance reviews and records checks that would have revealed Dovza used Bosco were unfit to safely operate a commercial motor vehicle; and

f. Failing to review or utilize equipment in or on the Tractor-Trailer providing real-time and historical access to Bosco's continual violations of speed limits and disregard of official traffic control devices.

173. The negligence of Amazon Services, by and through its employees, agents, related entities, and contractors, described above, did directly and proximately contribute to cause the subject collision and Plaintiff's injuries.

174. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Amazon Services as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT NINE – VICARIOUS LIABILITY**
**(AMAZON SERVICES)**

175. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

176. Prior to the subject collision, Amazon Services, by and through its employees, agents, subsidiaries, and contractors, had already hired, selected, employed, retained, and/or otherwise engaged the services of Dovza and Bosco to perform core tasks for and on behalf of the Amazon Defendants, including the delivery of goods in interstate commerce and on Texas roadways.

177. The subject collision occurred while Dovza and Bosco were actively performing core tasks for and on behalf of the Amazon Defendants.

178. On the date of the subject collision, Dovza and Bosco were acting as the agent of Amazon Services as:

a. Amazon Services, by and through its employees, agents, subsidiaries, and contractors, knew and acknowledged that Dovza and Bosco would act for and on behalf of the Amazon Defendants by delivering goods for the Amazon Defendants;

b. Dovza and Bosco accepted that undertaking and was delivering goods for the Amazon Defendants at the time of the subject collision; and

c. Amazon Services, by and through its employees, agents, subsidiaries, and contractors, exercised control and/or reserved the right to exercise control over Dovza and Bosco and the details of the services to be performed while acting within the scope of the agency delivering goods for the Amazon Defendants, including without limitation by: controlling the route and time of delivery; and providing tools necessary to complete the transportation such as the application software to arrange for, track, communicate with, and get paid for the subject load in question; and by loading and providing the Trailer in question.

179. Amazon Services is strictly liable for the acts and omissions constituting negligence and recklessness of Dovza and Bosco arising out of the work and services performed by Dovza and Bosco on behalf of the Amazon Defendants.

180. The negligence of Amazon Services' agents, Dovza and Bosco, did directly and proximately contribute to cause the subject collision and Plaintiff's injuries.

181. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Amazon Services as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT TEN – NEGLIGENCE/GROSS NEGLIGENCE**
**(AMAZON LOGISTICS)**

182. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

183. Amazon Logistics, by and through its employees, agents, related entities, affiliates, and contractors, as an integral part of its business and promises to customers for prompt delivery of goods, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States of America.

184. Amazon Logistics was a subsidiary of Amazon.com and a related entity to Amazon Services. Amazon Logistics, by and through its employees, agents, related entities, affiliates, and contractors, knew of, was an active participant in, and profited from the Amazon Defendants' scheme to put profits over safety by delivering its goods to customers utilizing unsafe and unrated motor carriers without any regard for the safety of the motoring public, including Dovza and Bosco.

185. Amazon Logistics created a foreseeable zone of danger to the public, specifically to include Plaintiff, including the foreseeable danger and expected consequence that people would be injured and/or killed by the unsafe and inexperienced motor carriers and their dangerous drivers that the Amazon Defendants' employees, agents, related entities, and contractors, utilized to move their goods in interstate commerce, including Dovza and Bosco, as evidenced by, i*nter alia*, the

Amazon Defendants' decision to utilize the services of unfit, unqualified, unvetted, untrained, and/or dangerous motor carriers using the roads and highways of Texas.

186. Accordingly, Amazon Logistics had nondelegable duties to act as a reasonable transportation shipper in the qualifying, monitoring, and selecting of reasonably safe interstate motor carriers to transport its freight.

187. Upon information and belief, Amazon Logistics also had contractual duties with its product suppliers to only select satisfactory motor carriers that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

188. Amazon Logistics, by and through its employees, agents, related entities, and contractors, undertook the duty to investigate, qualify, monitor, and select Dovza as a qualified motor carrier to move freight in interstate commerce for its customers.

189. Amazon Logistics, through its unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the motor carriers and actual drivers delivering its freight.

190. Amazon Logistics breached those duties, by and through its employees, agents, subsidiaries, and contractors, and selected Dovza, a dangerous motor carrier with a history of serious safety violations that showed it was likely to cause a collision.

191. Amazon Logistics breached those duties by not recognizing the dangerous and risky propensities of Dovza, by not utilizing or ignoring the information available regarding Dovza, and continuing to retain Dovza to move its freight.

192. Amazon Logistics was or should have been aware that Dovza used Bosco to move its freight.

193. Driving and operating the Tractor-Trailer involved in the subject collision constituted work that involved the risk of physical harm unless it was skillfully and carefully done. Amazon Logistics knew or should have known of this but failed to take the necessary precautions with respect to this risk.

194. Amazon Logistics further failed to enact and enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating state traffic laws and the FMCSR while delivering goods for Amazon Services.

195. Amazon Logistics failed to exercise reasonable control over the motor carriers and drivers it uses, including Dovza used Bosco, thereby exposing other motorists to unsafe acts and omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

196. Amazon Logistics, by and through its employees, agents, related entities, and contractors, breached its duties and was therefore negligent in one or more of the following ways:

a. Failing to perform or improperly performing background, driving record, physical fitness and/or character investigations that would have revealed Dovza used Bosco were unsafe and/or incompetent to perform the task as assigned;

b. Hiring and retaining Dovza used Bosco, despite the existence and ready availability of subpar safety ratings and driving records, which were or should have been known to Amazon Services;

c. Failing to verify and ensure that Dovza hired drivers what would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

d. Failing to perform or improperly performing review, audit and selection actions verifying Dovza used Bosco were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles;

e. Failing to perform or improperly performing performance reviews and records checks that would have revealed Dovza used Bosco were unfit to safely operate a commercial motor vehicle; and

f. Failing to review or utilize equipment in or on the Tractor-Trailer providing real-time and historical access to Bosco's continual violations of speed limits and disregard of official traffic control devices.

197. The negligence of Amazon Logistics, by and through its employees, agents, related entities, and contractors, described above, did directly and proximately contribute to cause the subject collision and Plaintiff's injuries.

198. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Amazon Logistics as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT ELEVEN – VICARIOUS LIABILITY**
**(AMAZON LOGISTICS)**

199. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

200. Prior to the subject collision, Amazon Logistics, by and through its employees, agents, subsidiaries, and contractors, had already hired, selected, employed, retained, and/or otherwise engaged the services of Dovza and Bosco to perform core tasks for and on behalf of the Amazon Defendants, including the delivery of goods in interstate commerce and on Texas roadways.

201. The subject collision occurred while Dovza and Bosco were actively performing core tasks for and on behalf of the Amazon Defendants.

202. On the date of the subject collision, Dovza and Bosco were acting as the agent of Amazon Logistics as:

a. Amazon Logistics, by and through its employees, agents, subsidiaries, and contractors, knew and acknowledged that Dovza and Bosco would act for and on behalf of the Amazon Defendants by delivering goods for the Amazon Defendants;

b. Dovza and Bosco accepted that undertaking and was delivering goods for the Amazon Defendants at the time of the subject collision; and

c. Amazon Logistics, by and through its employees, agents, subsidiaries, and contractors, exercised control and/or reserved the right to exercise control over Dovza and Bosco and the details of the services to be performed while acting within the scope of the agency delivering goods for the Amazon Defendants, including without limitation by: controlling the route and time of delivery; and providing tools necessary to complete the transportation such as the application software to arrange for, track, communicate with, and get paid for the subject load in question; and by loading and providing the Trailer in question.

203. Amazon Logistics is strictly liable for the acts and omissions constituting negligence and recklessness of Dovza and Bosco arising out of the work and services performed by Dovza and Bosco on behalf of the Amazon Defendants.

204. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Amazon Logistics as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT TWELVE – JOINT VENTURE**
**(AMAZON DEFENDANTS)**

205. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

206. At all times material to this action, Amazon.com, Amazon Services, and Amazon Logistics acted as members of a joint venture for profit while conducting business together to be the world's largest online retailer delivering purchased products to end customers promptly, sometimes even within hours. The joint venture necessarily required the transportation of goods in interstate commerce, including using the roads and highways of Texas.

207. The joint venture included the delivery of the subject load on or about November 17, 2022, using Dovza and/or Bosco to move the goods in commerce using the roads and highways of Texas in exchange for profit that resulted in the subject collision, all for the benefit of the Amazon Defendants and within the scope of the joint venture.

208. In pursuing the joint venture, the Amazon Defendants shared a common interest in the purposes to be accomplished and combined their resources or efforts or both, to undertake the joint venture, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

209. The Amazon Defendants exercised joint control over the joint venture and/or retained the right or authority to control the joint venture, as well as Dovza and Bosco.

210. The Amazon Defendants possessed some joint ownership interest in the subject matter of the joint venture.

211. The Amazon Defendants possessed some right to share in the profits of the joint venture.

212. The Amazon Defendants possessed some right to share in the losses of the joint venture.

213. Accordingly, the Amazon Defendants are each jointly and severally responsible for the negligence of any single joint venturer, and for acts and/or omissions committed within the scope of the joint venture.

214. The negligence and/or vicarious liability of at least one of the Amazon Defendants, described herein, did directly and proximately cause, or contribute to cause, the subject collision and Plaintiff's injuries.

215. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT THIRTEEN – JOINT VENTURE**
**(AMAZON DEFENDANTS and DOVZA)**

216. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

217. At all times material to this action, Amazon.com, Amazon Services, Amazon Logistics, and Dovza acted as members of a joint venture for profit while delivering Amazon's purchased products to end customers. The joint venture necessarily required the transportation of goods in interstate commerce, including using the roads and highways of Texas.

218. The joint venture included the delivery of the subject load on or about November 17, 2022, using Dovza and/or Bosco to move the goods in commerce using the roads and highways of Texas in exchange for profit that resulted in the subject collision, all for the benefit of the Amazon Defendants and within the scope of the joint venture.

219. In pursuing the joint venture, the Amazon Defendants shared a common interest in the purposes to be accomplished and combined their resources or efforts or both, to undertake the joint venture, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

220. The Amazon Defendants also joint ventured with Dovza for the shared community of interest in the performance of the common purpose of delivering Amazon goods to Amazon facilities and end customers in order to enable Amazon to meet its customer expectations of immediate or prompt delivery of purchased Amazon goods.

221. The Amazon Defendants and Dovza, by and through their employees, agents, related entities, affiliates, and contractors, each exercised joint control over the joint venture and/or retained the right or authority to control the joint venture.

222. The Amazon Defendants and Dovza possessed some joint proprietary interest in the subject matter of the joint venture, including without limitation the prompt transportation of goods in interstate commerce for payment.

223. The Amazon Defendants and Dovza possessed some right to share in the profits of the joint venture, including without limitation the profits to the Amazon Defendants for the completed sale and delivery of the products, and the profits of the completing the transportation of the goods in interstate commerce for payment to Dovza.

224. The Amazon Defendants and Dovza possessed some right to share in the losses of the joint venture, including without limitation the loss of profits to the Amazon Defendants and refunds to customers for damaged or destroyed Amazon products, and the loss of profits for not completing the transportation of the goods in interstate commerce, for payment to Dovza.

225. Accordingly, the Amazon Defendants and Dovza are each jointly and severally responsible for the negligence of any single joint venturer, and for acts and/or omissions committed within the scope of the joint venture.

226. The negligence and/or vicarious liability of at least one of the Amazon Defendants and Dovza, described herein, did directly and proximately cause, or contribute to cause, the subject collision and Plaintiff's injuries.

227. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants and Dovza as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT FOURTEEN – JOINT ENTERPRISE**
**(AMAZON DEFENDANTS)**

228. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

229. At all times material to this action, Amazon.com, Amazon Services, and Amazon Logistics acted as members of a joint enterprise for profit while conducting business together to be the world's largest online retailer delivering purchased products to end customers promptly, sometimes even within hours. The joint enterprise necessarily required the transportation of goods in interstate commerce, including using the roads and highways of Texas.

230. The joint enterprise included the delivery of the subject load on or about November 17, 2022, using Dovza and/or Bosco to move the goods in commerce using the roads and highways

of Texas in exchange for profit that resulted in the subject collision, all for the benefit of the Amazon Defendants and within the scope of the joint enterprise.

231. In pursuing the joint enterprise, the Amazon Defendants expressly or impliedly agreed to share a common purpose to be accomplished by them and combined their resources or efforts or both, to undertake the joint enterprise, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

232. The Amazon Defendants had an equal say in the direction of the joint enterprise and an equal right to control the joint enterprise and/or retained the right or authority to control the joint enterprise, as well as Dovza and/or Bosco.

233. The Amazon Defendants had a community of pecuniary interest in the subject matter of the joint enterprise.

234. Accordingly, the Amazon Defendants are each jointly and severally responsible for the negligence of any single member of the joint enterprise, and for acts and/or omissions committed within the scope of the joint enterprise.

235. The negligence and/or vicarious liability of at least one of the Amazon Defendants, described herein, did directly and proximately cause, or contribute to cause, the subject collision and Plaintiff's injuries.

236. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**COUNT FIFTEEN – JOINT ENTERPRISE**
**(AMAZON DEFENDANTS and DOVZA)**

237. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

238. At all times material to this action, Defendants Amazon.com, Amazon Services, Amazon Logistics, and Dovza acted as members of a joint enterprise for profit while delivering Amazon's purchased products to end customers. The joint enterprise necessarily required the transportation of goods in interstate commerce, including using the roads and highways of Texas.

239. The joint enterprise included the delivery of the subject load on or about November 17, 2022, using Dovza to move the goods in commerce on the roads and highways of Texas in exchange for profit that resulted in the subject collision, all for the benefit of the Amazon Defendants and within the scope of the joint enterprise.

240. In pursuing the joint enterprise, the Amazon Defendants and Dovza expressly or impliedly agreed to share a common purpose to be accomplished by them and combined their resources or efforts or both, to undertake the joint enterprise, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

241. The Amazon Defendants and Dovza had a community of pecuniary interest in the subject matter of the joint enterprise.

242. Accordingly, the Amazon Defendants and Dovza are each jointly and severally responsible for the negligence of any single member of the joint enterprise, and for acts and/or omissions committed within the scope of the joint enterprise.

243. The negligence and/or vicarious liability of at least one of the Amazon Defendants and Dovza, described herein, did directly and proximately cause, or contribute to cause, the subject collision and Plaintiff's injuries.

244. Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants and Dovza as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

WHEREFORE, Plaintiff prays for the following:

i. Judgment against Defendants jointly and severally for actual and punitive damages in an amount to be determined by the jury;
ii. For the costs of this action; and
iii. For such other and further relief as this court deems just and proper.

Respectfully submitted,

LAMINACK, PIRTLE & MARTINES

/s/_RUSS M. BRUDNER___________

THOMAS W. PIRTLE
Texas Bar No. 16038610
BUFFY K. MARTINES
Texas Bar No. 24030311
RUSS M. BRUDNER
Texas Bar No. 00787154
russb@lpm-triallaw.com
5020 Montrose Blvd., 9th Floor
Houston, Texas 77006
Telephone: 713/292-2750
Facsimile: 713/292-2755

ATTORNEYS FOR PLAINTIFF

September 9, 2024